UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RHAWN JOSEPH,<br><br>   Plaintiff,<br><br>  v.<br><br>AMAZON.COM INC., et al.,<br><br>   Defendants. | Case No. 23-cv-05176-PCP<br><br>**ORDER GRANTING MOTION TO COMPEL ARBITRATION & DENYING MOTION FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. Nos. 11, 14 |

  Pro se plaintiff Dr. Rhawn Joseph brings this action against defendants Amazon.com, Inc. and Amazon.com Services LLC ("Amazon") asserting several causes of action including breach of contract, fraud, and financial elder abuse related to his sale of books through Amazon's Kindle Direct Publishing. Amazon has moved to compel arbitration under the Federal Arbitration Act, arguing that Dr. Joseph's agreement with Amazon included an agreement to arbitrate any dispute and delegated questions of arbitrability to the arbitrator. Before the Court is also Dr. Joseph's motion for summary judgment. For the following reasons, Amazon's motion to compel arbitration is granted and Dr. Joseph's motion for summary judgment is denied without prejudice. This case is stayed pending arbitration.

## BACKGROUND

  Amazon's motion is premised upon a contractual agreement governing Dr. Joseph's business relationship with Amazon. Dr. Joseph is a self-publishing author who has used Amazon's Kindle Direct Publishing (KDP) to publish his work. As a condition of creating an account to publish and sell through Amazon's KDP services, authors must agree to Amazon's KDP Terms and Conditions ("Agreement") by clicking "Agree" during the online registration process. Dkt. No. 13, at 2–3. According to Amazon, in August 2011, Dr. Joseph agreed to the Agreement as published on the KDP website on July 8, 2011. *Id.* at 2. Amazon contends that each time Dr.

Joseph published a new book or created an account through CreateSpace, a separate program, Dr. Joseph was again presented with, attested to compliance with, and agreed to the KDP terms and services. *Id.* at 4–5. Dr. Joseph does not dispute that he entered into the Agreement with Amazon.[1]

The Agreement included the following arbitration provision:

> 10.1 Disputes. Any dispute or claim relating in any way to this Agreement or KDP will be resolved by binding arbitration, rather than in court, except that either party may elect to proceed in small claims court in the United States if the claims qualify under applicable law. The United States Federal Arbitration Act and federal arbitration law apply to this Agreement. There is no judge or jury in arbitration, and court review of an arbitration award is limited. However, an arbitrator can award the same damages and relief as a court (including injunctive and declaratory relief or statutory damages), and must follow the terms of this Agreement as a court would. Before you may begin an arbitration proceeding, you must send a letter notifying us of your intent to pursue arbitration and describing your claim to our registered agent Corporation Service Company, 300 Deschutes Way SW, Suite 304, Tumwater, WA 98501, USA. The arbitration will be conducted by the American Arbitration Association (AAA) under its Commercial Arbitration Rules. Payment of all filing, administration and arbitrator fees will be governed by the AAA's Commercial Fee Schedule. You and we each agree that the underlying award in arbitration may be appealed pursuant to the AAA's Optional Appellate Arbitration Rules. The AAA's rules and fee schedules are available at www.adr.org or by calling 1-800-778-7879 (in the United States). You and we each agree that any dispute resolution proceedings will be conducted only on an individual basis and not in a class, consolidated or representative action. If for any reason a claim proceeds in court rather than in arbitration you and we each waive any right to a jury trial and you and we agree that any such suit may proceed only in state or Federal court in King County, Washington.

Dkt. No. 13-4, at 12. The Agreement also included a choice-of-law provision: "The United States Federal Arbitration Act, applicable United States federal law, and the laws of the state of Washington, USA, without regard to principles of conflict of laws, will govern this Agreement and any dispute of any sort that might arise between you and Amazon relating to this Agreement or the Program." *Id.*

Dr. Joseph alleges that Amazon breached its duties under the Agreement in April 2022 when it "failed to post all royalty earnings … and began withholding and refusing to deposit most but not all of Plaintiff's earnings and falsely claiming that after 11 years Plaintiff's bank account

---

[1] Dr. Joseph attached a 2023 version of the Agreement as Exhibit 7 to his Complaint. Dkt. No. 1-3, at 41–49 (designated "Exhibit 7: Amazon Contract with Plaintiff Rhawn Joseph").

2

information is suddenly incorrect which is an obvious lie as Amazon continues to make some but not all payments." Compl., Dkt. No. 1-3, at 4. He seeks to recover royalties owed under the Agreement pursuant to Subsection 5.4.2, which provides in relevant part that Amazon "will pay Royalties due on Book sales approximately 60 days following the end of the calendar month during which the sales were made" at which time Amazon "will make available to you an online report detailing sales of Books and corresponding Royalties." Dkt. No. 13-4, at 7–8.

Pursuant to the Agreement, Dr. Joseph initiated arbitration with AAA on July 26, 2023. Due to a dispute about administrative fees, however, Dr. Joseph did not proceed with arbitration. On September 8, 2023, Dr. Joseph instead filed the present action in Santa Clara County Superior Court. On October 10, 2023, Amazon removed this action to federal court. Amazon subsequently moved to compel arbitration, and Dr. Joseph moved for summary judgment.

## LEGAL STANDARD

The Federal Arbitration Act provides that a "written provision in ... a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction ... shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. As this language makes clear, "an arbitration agreement is a contract like any other." *Bielski v. Coinbase, Inc.*, 87 F.4th 1003, 1009 (9th Cir. 2023). And like other contracts, arbitration agreements are subject to "generally applicable contract defenses" like "fraud, duress, or unconscionability." *Lim v. TForce Logs., LLC*, 8 F.4th 992, 999 (9th Cir. 2021). There is one way arbitration provisions in a contract are distinct, however: "[A]s a matter of substantive federal arbitration law, an arbitration provision is severable from the remainder of the contract." *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 445 (2006). In other words, notwithstanding state law on severability, an arbitration provision can be valid and enforceable even if other parts of the contract it is in are not.

A purported arbitration agreement presents a few "gateway" issues: First, whether an agreement to arbitrate was actually formed. *See Ahlstrom v. DHI Mortg. Co., Ltd., L.P.*, 21 F.4th 631, 634–35 (9th Cir. 2021). Second, whether that agreement is "valid," *Bielski*, 87 F.4th at 1009, in other words, whether there are any defenses. Third, "whether the agreement encompasses the

dispute at issue." *Id.*

Normally, these gateway questions are resolved by a court. But parties to an arbitration provision can also enter a separate agreement to arbitrate some of these gateway questions—a "delegation" provision—as long as the parties "*clearly and unmistakably* provide" that the "gateway issues ... be expressly delegated to the arbitrator." *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015) (emphasis in original) (quoting *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986)); *see also First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995) ("Courts should not assume that the parties agreed to arbitrate arbitrability unless there is 'clea[r] and unmistakabl[e]' evidence that they did so."). "An agreement to arbitrate a gateway issue is simply an additional, antecedent agreement the party seeking arbitration asks the federal court to enforce, and the FAA operates on this additional arbitration agreement just as it does on any other." *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 70 (2010). And, like any other arbitration provision, a delegation provision is severable. *See Buckeye*, 546 U.S. at 445. Not all gateway questions can be delegated, however. While "some 'gateway' issues ..., such as issues of validity and arbitrability, can be delegated," "parties cannot delegate issues of formation." *Ahlstrom*, 21 F.4th at 634–35.

All of this means that when presented with a contract that includes both an arbitration provision and a delegation provision, a reviewing court can consider three types of challenges: (1) formation challenges to the delegation provision, *see Ahlstrom*, 21 F.4th at 635; (2) validity and enforceability challenges to the delegation provision, *see Bielski*, 87 F.4th at 1009; and (3) formation challenges to the underlying arbitration provision, *see Ahlstrom*, 21 F.4th at 635. But if the delegation provision is valid, the court cannot consider validity or enforceability challenges to the underlying arbitration provision. *See also Caremark, LLC v. Chickasaw Nation*, 43 F.4th 1021, 1030 (9th Cir. 2022) ("First, a court must resolve any challenge that an agreement to arbitrate was never formed, even in the presence of a delegation clause. Next, a court must also resolve any challenge directed specifically to the enforceability of the delegation clause before compelling arbitration of any remaining gateway issues of arbitrability. Finally, if the parties did form an agreement to arbitrate containing an enforceable delegation clause, all arguments going to the

4

scope or enforceability of the arbitration provision are for the arbitrator to decide.").

Formation challenges to either a delegation provision or an underlying arbitration provision are decided pursuant to state law. *Berman v. Freedom Fin. Network*, *LLC*, 30 F.4th 849, 855 (9th Cir. 2022) ("In determining whether the parties have agreed to arbitrate a particular dispute, federal courts apply state-law principles of contract formation."). To challenge the validity or enforceability of a delegation provision, "a party resisting arbitration must mention that it is challenging the delegation provision and make specific arguments." *Bielski*, 87 F.4th at 1009. But while challenges must be specific, they need not be unique: A party "may challenge the delegation provision and the arbitration agreement for the same reasons, so long as the party specifies why each reason renders the specific provision unenforceable." *Id.* at 1009–10.

If the Court is "satisfied that the making of the agreement for arbitration ... is not in issue" it must "make an order directing the parties to proceed to arbitration." 9 U.S.C. § 4. The summary judgment standard applies. *Hansen v. LMB Mortg. Servs., Inc.*, 1 F.4th 667, 670 (9th Cir. 2021). The Court must "give to the opposing party the benefit of all reasonable doubts and inferences." *Sanford v. MemberWorks, Inc.*, 483 F.3d 956, 963 n.9 (9th Cir. 2007).

## ANALYSIS

As noted already, contracting parties "may delegate threshold arbitrability questions to the arbitrator, so long as the parties' agreement does so by 'clear and unmistakable' evidence." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 69 (2019) (cleaned up). "To be sure, before referring a dispute to an arbitrator, the court determines whether a valid arbitration agreement exists … But if a valid agreement exists, and if the agreement delegates the arbitrability issue to an arbitrator, a court may not decide the arbitrability issue." *Id.*

Amazon contends that the Agreement clearly and unmistakably delegates arbitrability questions to the arbitrator because it incorporates the AAA Commercial Arbitration Rules and Mediation Procedures. Dkt. No. 11, at 12. The relevant provision of the Agreement states: "The arbitration will be conducted by the American Arbitration Association (AAA) under its Commercial Arbitration Rules." Dkt. No. 13-4, at 12. Rule R-7(a) under the AAA Commercial Arbitration Rules and Mediation Procedures provides:

> The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counter claim.

Dkt. No. 13-3, at 15.

The Ninth Circuit has held that such an "incorporation of the AAA rules [can] constitut[e] clear and unmistakable evidence that contracting parties agreed to arbitrate arbitrability." *Brennan*, 796 F.3d at 1130. Because the parties' agreement here incorporates those same rules and Dr. Joseph does not dispute that he entered into the agreement, the parties validly delegated all questions of arbitrability to the arbitrator.[2]

Dr. Joseph raises arguments going to the merits of the underlying dispute and challenges the scope of the Agreement, arguing, for example, that the Agreement does not cover five of his six causes of action. Dkt. No. 14, at 17. Because there is a valid arbitration agreement with a clear and unmistakable delegation clause, however, these issues are not properly before the Court. "The parties did form an agreement to arbitrate containing an enforceable delegation clause," and consequently, "all arguments going to the scope or enforceability of the arbitration provision are for the arbitrator to decide." *Caremark*, 43 F.4th at 1030.

## CONCLUSION

For the foregoing reasons, Amazon's motion to compel arbitration is granted and Dr. Joseph's motion for summary judgment is denied without prejudice. Because Amazon requests a stay pending arbitration, Dkt. No. 11, at 16, this action will be stayed until the arbitration has been completed. *Smith v. Spizzirri*, 144 S. Ct. 1173, 1178 (2024). Amazon shall notify the Court within 14 days after the arbitration is completed, and shall submit a one-page status report by the first day

---

[2] The Court's holding in *Brennan* was limited to the context of "sophisticated" contracting parties and left open "the possibility that this rule could also apply to unsophisticated parties or to consumer contracts." *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015); *see Patrick v. Running Warehouse, LLC*, 93 F.4th 468, 481 (9th Cir. 2024) ("Our circuit has not yet decided whether Brennan's holding should extend to arbitration clauses in consumer contracts between a sophisticated entity and an average unsophisticated consumer."). Dr. Joseph does not contend that he is the kind of "unsophisticated" party whose arbitration agreement might not be covered by *Brennan*.

of every September and March in the meantime.

**IT IS SO ORDERED.**

Dated: June 14, 2024

_____
P. Casey Pitts
United States District Judge